# Illinois Official Reports

## Appellate Court

---

### *Devyn Corp. v. City of Bloomington*, 2015 IL App (4th) 140819

---

| | |
|---|---|
| Appellate Court Caption | DEVYN CORPORATION, an Illinois Corporation, Plaintiff-Appellant, v. THE CITY OF BLOOMINGTON, ILLINOIS, an Illinois Municipal Corporation, Defendant-Appellee. |
| District & No. | Fourth District<br>Docket No. 4-14-0819 |
| Rule 23 order filed<br>Rule 23 order withdrawn<br>Opinion filed | June 8, 2015<br><br>September 15, 2015<br>September 15, 2015 |
| Decision Under Review | Appeal from the Circuit Court of McLean County, No. 10-MR-110; the Hon. Rebecca Simmons Foley, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Thomas W. Kelty (argued), of Kelty Law Offices, of Springfield, and Patrick B. McGrath (argued), of McGrath Law Office, P.C., of Mackinaw, for appellant.<br><br>Thomas G. Gardiner, Richard C. Gleason, and Michelle M. LaGrotta (argued), all of Gardiner, Koch, Weisberg & Wrona, of Chicago, for appellee. |

Panel          JUSTICE HOLDER WHITE delivered the judgment of the court, with opinion.
Justices Knecht and Steigmann concurred in the judgment and opinion.

**OPINION**

¶ 1     In October 2011, plaintiff, Devyn Corporation, filed a three-count amended complaint against defendant, the City of Bloomington, Illinois, alleging defendant had failed to comply with various provisions of the Tax Increment Allocation Redevelopment Act (Act) (65 ILCS 5/11-74.4.-1 to 11-74.4-11 (West 2010)). Therein, plaintiff sought a writ of *mandamus* (count I), an equitable accounting (count II), and a declaratory judgment (count III).

¶ 2     In March 2012, the trial court, by agreement of the parties, dismissed count I of plaintiff's amended complaint. Thereafter, in December 2013, the court granted summary judgment in favor of defendant as to count III of plaintiff's amended complaint. Later, in April 2014, the court granted defendant's motion for summary judgment as to count II of plaintiff's complaint. In September 2014, the court denied plaintiff's motion for leave to further amend its complaint.

¶ 3     Plaintiff appeals, arguing the trial court erred in (1) entering summary judgment in favor of defendant as to count III of its amended complaint, (2) entering summary judgment in favor of defendant as to count II of its amended complaint, and (3) denying plaintiff's request for further leave to amend its complaint. We affirm.

¶ 4                         I. BACKGROUND
¶ 5                 A. Tax-Increment-Allocation Financing
¶ 6     Before setting forth the facts pertinent to our decision, a brief overview of the Act is helpful to understand the parties' contentions. The Act enables a municipality to eliminate blighted conditions from within its boundaries by diverting incremental property-tax revenues from taxing bodies, such as school, park, sanitary, and fire districts, located within a proposed tax-increment-financing district (tax district). *Henry County Board v. Village of Orion*, 278 Ill. App. 3d 1058, 1060, 663 N.E.2d 1076, 1079 (1996). The incremental-property-tax revenues are used to fund public improvements within the tax district. *Id.* "The tax bases of a municipality and its taxing districts are enhanced through encouraging private investment within the proposed [tax] district." *Id.* at 1060-61, 663 N.E.2d at 1079.

¶ 7     Pursuant to the Act, after a municipality creates a tax district, all increases in the property-tax revenue from properties within the tax district are placed in a special fund and used to pay development expenses within the tax district. *Barber v. City of Springfield*, 406 Ill. App. 3d 1099, 1107, 943 N.E.2d 1157, 1165 (2011). When the tax district is dissolved, the unencumbered funds, or "surplus" monies, are returned to the overlapping taxing bodies. 65 ILCS 5/11-74.4-8 (West 2010).

¶ 8                                    B. The Downtown Bloomington Tax District

¶ 9        On December 22, 1986, pursuant to the Act, the Bloomington city council passed ordinance No. 1986-189, which approved the Downtown Bloomington Tax Increment Redevelopment Plan (Plan) and created the Downtown Bloomington Redevelopment Project Area (District). According to the Plan, the estimated date of completion for the redevelopment project and retirement of its obligations was December 21, 2009. The parties agree the Bloomington city council never amended the Plan or changed its estimated date of completion.

¶ 10                                  C. Events Giving Rise to Plaintiff's Action

¶ 11       Plaintiff owns real property located within the District. As a result, plaintiff is subject to the levy of property taxes by the city and various other overlapping taxing bodies. On two occasions throughout the life of the Plan and District, plaintiff received distributions from the District's fund to partially defray the costs of redevelopment projects undertaken by plaintiff, totaling $486,120.

¶ 12       Throughout the duration of the Plan, defendant received various amounts of incremental tax revenues and deposited them into the District's special fund. The District received its first distribution of incremental-property-tax revenues in 1987, for those taxes levied in 1986, and its final distribution of incremental-property-tax revenues in 2010, for those taxes levied in 2009. Pursuant to the Act, defendant approved various projects and committed District funds to be used in conjunction with private investment to complete the redevelopment projects.

¶ 13       In 2009, defendant determined approximately $1.9 million would be available in the District's fund on or before December 2010. After learning of the availability of these funds, the Bloomington city council held a "council work session" in which it reviewed proposals of various projects to be completed within the District. The purpose of the "council work sessions" was to create a priority list for proposed projects within the District. On November 9, 2009, the Bloomington city council adopted resolution No. 2009-52, which set forth the priority list for the final year of the Plan and District. At the top of the priority list were various infrastructure improvements and building-façade grants.

¶ 14       Thereafter, on December 28, 2009, the Bloomington city council, at a regularly scheduled meeting, approved various contracts and otherwise committed District funds for projects to be completed in the District in accordance with the priority list. During this meeting, plaintiff, through its representative, voiced its objection to defendant's use of the District's funds to pay for infrastructure improvements within the District, contending defendant's actions violated the Act.

¶ 15       In 2010, defendant received the final incremental tax revenues from property taxes levied in 2009 and deposited them into the District's fund. Upon receipt of this money, defendant paid for the final projects pursuant to the contracts approved at the December 28, 2009, city council meeting. At this time, the District's fund contains $60,605.95, which are funds reserved to pay for the costs associated with the litigation at issue in this appeal.

¶ 16                                  D. Plaintiff's Amended Complaint

¶ 17       In October 2011, plaintiff filed its three-count amended complaint. In count I, plaintiff alleged defendant, in filing its annual reports, failed to comply with sections 11-74.4-5(d)(2) and 11-74.4-5(d)(9) of the Act (65 ILCS 5/11-74.4-5(d)(2), (d)(9) (West 2010)). Count I

sought an order of *mandamus*, compelling defendant to comply with the mandatory audit requirements of both sections. In count II, plaintiff alleged defendant's financial statements failed to account for the expenditure of $2,755,367, which evidenced a violation of the audit requirements contained in section 11-74.4-5(d)(9) of the Act. Count II sought an order for an equitable accounting, requiring defendant "to account for the balances of the [District's fund] for the period of May 1, 1986[,] through December 31, 2009, and for all [tax-incremental-financing] revenues received from taxes levied and collected beyond the permitted 23rd year." In count III, plaintiff alleged defendant had unlawfully appropriated "to its own use tax increment funds from taxes which had been derived from [p]laintiff's property which are owed to those other taxing bodies" in violation of its rights as a taxpayer. Count III further alleged defendant had unlawfully levied, collected, and paid out incremental revenues beyond the termination date of the Plan and District. Count III sought a declaratory judgment finding defendant's actions as described therein unlawful.

¶ 18                                    E. Procedural History

¶ 19        The procedural history of this protracted litigation is complex, and we set forth only as much detail as is relevant for purposes of plaintiff's appeal.

¶ 20        In March 2012, the trial court entered an agreed order dismissing count I of plaintiff's complaint.

¶ 21        In May 2012, plaintiff filed a motion for summary judgment as to count III of its amended complaint pursuant to section 2-1005 of the Code of Civil Procedure (Civil Code) (735 ILCS 5/2-1005 (West 2012)). In August 2012, defendant filed a response to plaintiff's motion. Later that month, following a hearing, the trial court denied plaintiff's motion.

¶ 22        In October 2013, the parties agreed to file cross-motions for summary judgment as to count III of plaintiff's amended complaint. In defendant's motion, it argued the estimated date of completion of the District–December 21, 2009–"never had any significance except as an *estimated* date of expiration of the District." Additionally, defendant argued the express language of the Act allowed it to levy taxes in 2009, which were to be received in 2010. Therefore, defendant argued, its actions as described in count III of plaintiff's amended complaint were lawful.

¶ 23        Plaintiff's motion argued the District was entitled only to those taxes collected before December 21, 2009, the estimated date of completion, and not those taxes levied in 2009 and collected in 2010. According to plaintiff, the District's estimated date of completion was not extended by ordinance, as was required by the Act. Thus, any incremental-property-tax revenue received after the date of completion was "surplus" under the Act and was required to be distributed to the overlapping taxing bodies. However, defendant retained this surplus and allocated this money for projects within the District after the estimated date of completion of the District.

¶ 24        In December 2013, the trial court entered an order granting summary judgment in favor of defendant as to count III of plaintiff's amended complaint. The court found the estimated date of completion for the Plan and District–December 21, 2009–served only as an estimate and, therefore, "did not act as a bar to [defendant] levying property taxes through the remainder of 2009, and subsequently collecting those taxes in 2010." Additionally, the court found the ordinances establishing the Plan and District were silent as to an actual expiration date for the

District and defendant was not required to establish such a date. Finally, the court noted the language in section 11-74.4-3.5 of the Act (65 ILCS 5/11-74.4-3.5 (West 2010)), which states the estimated date of completion of a redevelopment plan "may not be later than December 31 of the year in which the payment to the municipal treasurer *** is to be made with respect to ad valorem taxes levied in the 23rd calendar year after the year in which the ordinance approving the [District] was adopted if the ordinance was adopted on or after January 15, 1981." Because the Bloomington city council adopted the ordinance establishing the Plan and District after January 15, 1981, defendant lawfully collected in 2010 those taxes levied before the expiration of the Plan and District on December 31, 2009.

¶ 25     In January 2014, plaintiff filed a motion for rehearing pursuant to section 2-1203 of the Civil Code (735 ILCS 5/2-1203 (West 2012)) concerning the trial court's December 2013 order granting summary judgment in favor of defendant. Therein, plaintiff contended the court should grant a rehearing on the parties' cross-motions for summary judgment "to allow the court to take into consideration documentary evidence of the understanding and intent of then City manager Tom Hamilton stated at a public hearing November 17, 1986."

¶ 26     In March 2014, defendant filed a motion for summary judgment as to count II of plaintiff's amended complaint. Defendant attached to its motion copies of its certified annual financial reports as well as the "ledgers" concerning the District's fund, which were all furnished to plaintiff pursuant to discovery requests. These "ledgers" accounted for the receipt and disbursement of all monies from the District's fund. Additionally, defendant's counsel met with plaintiff and its counsel to explain the complex financial records which it had tendered.

¶ 27     On April 7, 2014, plaintiff filed a motion for leave to file its second amended complaint pursuant to section 2-616 of the Civil Code (735 ILCS 5/2-616 (West 2012)).

¶ 28     On April 8, 2014, the trial court held a hearing on defendant's motion for summary judgment as to count II of plaintiff's amended complaint and plaintiff's motion to reconsider the court's entry of judgment as to count III of its amended complaint. Following this hearing, the court (1) took defendant's motion for summary judgment as to count II under advisement, (2) denied plaintiff's motion to reconsider its grant of summary judgment in favor of defendant as to count III, and (3) set a briefing schedule with regard to plaintiff's motion for leave to file its second amended complaint. Pursuant to this briefing schedule, the court (1) allowed defendant until April 29, 2014, to file its response to plaintiff's motion for leave; (2) allowed plaintiff until May 13, 2014, to reply to defendant's response; and (3) set the motion for hearing on May 23, 2014.

¶ 29     On April 29, 2014, the trial court entered a written order granting defendant's motion for summary judgment as to count II of plaintiff's amended complaint. Therein, the court found plaintiff failed to establish a basis for equitable jurisdiction, as it failed to allege it lacked an adequate remedy at law. Additionally, the court noted its equitable jurisdiction may be invoked in cases where an accounting is sought where plaintiff establishes (1) the parties shared mutual accounts, (2) a need for discovery exists, (3) the defendant breached its fiduciary duty to the plaintiff, or (4) the defendant committed fraud on the plaintiff. Finding plaintiff failed to establish any of these four circumstances, the court granted defendant's motion.

¶ 30     On May 12, 2014, plaintiff filed a motion for leave to withdraw and refile its motion for leave to file its second amended complaint. The parties thereafter corresponded concerning a briefing schedule for plaintiff's motion and submitted an agreed order to the trial court. Pursuant to the terms of that order, the trial court granted plaintiff leave to file its motion for

leave to file its third amended complaint on or before May 29, 2014. Although plaintiff's counsel submitted the agreed order to the court on May 27, 2014, the court did not sign and enter the order until June 2, 2014. Thereafter, on June 6, 2014, plaintiff filed its motion for leave to file its third amended complaint.

¶ 31    On September 4, 2014, the trial court entered a written order denying plaintiff's motion for leave to file its third amended complaint. As part of this order, the court addressed its jurisdiction to hear the motion, as defendant had argued the court lost jurisdiction over the matter given plaintiff had failed to file a postjudgment motion within 30 days after the entry of the April 29, 2014, order granting summary judgment in its favor as to count II. The court found it had jurisdiction to entertain plaintiff's motion.

¶ 32    This appeal followed.


¶ 33                                II. ANALYSIS

¶ 34    On appeal, plaintiff argues the trial court erred in (1) granting summary judgment in favor of defendant on count III of its amended complaint, (2) granting summary judgment in favor of defendant on count II of its amended complaint, and (3) denying plaintiff's motion for leave to file its third amended complaint. However, before we reach the merits of plaintiff's appeal, we must first address our jurisdiction.


¶ 35                               A. Jurisdiction

¶ 36    Defendant contends this court lacks jurisdiction to hear plaintiff's appeal. Defendant's argument proceeds as follows. The trial court entered a final and appealable order on April 29, 2014, when it granted defendant's motion for summary judgment as to count II of plaintiff's amended complaint, which was the last remaining count at issue. According to defendant, plaintiff thereafter failed to file a postjudgment motion attacking the entry of judgment or a notice of appeal within 30 days of the court's April 29, 2014, order. Therefore, defendant argues, the time for filing a notice of appeal was not tolled, and plaintiff's September 17, 2014, notice of appeal was not timely. In support of its position, defendant cites *Andersen v. Resource Economics Corp.*, 133 Ill. 2d 342, 549 N.E.2d 1262 (1990), *abrogated on other grounds by Kingbrook, Inc. v. Pupurs*, 202 Ill. 2d 24, 779 N.E.2d 867 (2002).

¶ 37    In *Andersen*, the trial court dismissed the plaintiff's second amended complaint on March 28, 1985. *Id.* at 344, 549 N.E.2d at 1263. On April 26, 1985, the plaintiff filed a notice of appeal from the court's dismissal. *Id.* Later that same day, the plaintiff filed a motion for leave to file his third amended complaint, which sought to " 'state a theory substantively different from the prior allegations' and 'cure any defect in the [s]econd [a]mended [c]omplaint.' " *Id.* Thereafter, on June 23, 1985, the plaintiff moved to dismiss his appeal, claiming his motion for leave to file a third amended complaint was a posttrial motion. *Id.* On July 23, 1985, the court entered an order withdrawing the plaintiff's notice of appeal and noted the defendant's objection to the motion for the leave's treatment as a posttrial motion. *Id.* On October 8, 1985, the court denied the plaintiff's motion for leave to amend and, in announcing its ruling, noted both it and defense counsel "had cautioned plaintiff with regard to his motion to dismiss his appeal and defense counsel had actually advised plaintiff that 'such action would effectively end the dispute because no valid post[ ]trial motion' had been filed." *Id.* at 344-45, 549 N.E.2d

at 1263. On November 6, 1985, the plaintiff filed his notice of appeal. *Id.* at 345, 549 N.E.2d at 1264.

¶ 38 The appellate court concluded the plaintiff's motion for leave to file a third amended complaint qualified as a posttrial motion. *Id.* Thus, the appellate court found it had jurisdiction to hear the plaintiff's appeal and reversed the trial court's order dismissing the plaintiff's second amended complaint. *Id.* at 346, 549 N.E.2d at 1264. The defendant appealed to the supreme court. *Id.* The supreme court vacated the appellate court's judgment, holding the plaintiff's motion for leave to amend a third amended complaint was not a valid postjudgment motion capable of extending the time for filing a notice of appeal under Illinois Supreme Court Rule 303(a)(1) (eff. July 1, 1984). *Andersen*, 133 Ill. 2d at 346, 549 N.E.2d at 1264. Thus, the supreme court found it lacked jurisdiction, as the plaintiff had withdrawn its timely April 26, 1985, notice of appeal without filing a posttrial motion attacking the judgment within 30 days of the trial court's March 28 dismissal of the plaintiff's second amended complaint. *Id.* at 346-47, 549 N.E.2d at 1264.

¶ 39 In *Fultz v. Haugan*, 49 Ill. 2d 131, 132, 305 N.E.2d 403, 404 (1971), a case cited by the *Andersen* court, the plaintiff filed her complaint on December 4, 1969. The defendant thereafter filed a motion to dismiss, which was granted by the trial court on March 31, 1970. *Id.* On April 21, 1970, the plaintiff filed a motion to vacate the court's order of dismissal, which the court denied on April 24, 1970. *Id.* at 132-33, 305 N.E.2d at 874. The plaintiff thereafter substituted counsel and, on May 18, 1970, filed a motion for leave to file a first amended complaint. *Id.* at 133, 305 N.E.2d at 874. On May 22, 1970, the court held a hearing on the plaintiff's motion for leave to amend. *Id.* at 133, 305 N.E.2d at 875. At this time, the defendant objected to the filing of an amended complaint after final judgment had been entered, and the court allowed the plaintiff to file a brief in support of her motion. *Id.* During the hearing, counsel for the plaintiff acknowledged the time for appeal was about to expire but did not file a motion attacking the April 24 order or request an extension of time in which to do so. *Id.* On June 1, 1970, counsel for the plaintiff filed a brief in support of her motion for leave and, without leave of court, included a new motion attacking the court's March 31 order of dismissal. *Id.* at 133-34, 305 N.E.2d at 875. On July 2, 1970, the court denied the plaintiff's motion for leave and her new motion attacking the court's previous dismissal order, and the plaintiff appealed. *Id.* at 134, 305 N.E.2d at 875.

¶ 40 On appeal, the supreme court explained that, after the April 24 order denying her motion to vacate, the plaintiff had 30 days within which to file a notice of appeal, a motion attacking the court's April 24 order, or to obtain an extension of time in which to do so. *Id.* at 135, 305 N.E.2d at 875-76. The supreme court found (1) the plaintiff's June 1 motion to vacate the March 31 order was not timely, as it had been filed after 30 days had lapsed; and (2) therefore, her notice of appeal filed within 30 days after the court denied her June 1 motion could not seek review of the court's March 31 and April 24 orders. *Id.* at 135, 273 N.E.2d at 876. Additionally, the supreme court rejected the plaintiff's argument her May 18 motion for leave to amend extended the time within which to file further motions attacking the original dismissal order, holding a motion for leave to amend was not a motion directed against the judgment that would toll the time for filing subsequent motions attacking the judgment or a notice of appeal. *Id.* at 135-36, 305 N.E.2d at 876.

¶ 41 *Andersen* and *Fultz* are distinguishable. In those cases, the plaintiffs filed their motions for leave to amend *after* the orders dismissing the plaintiffs' complaints had been entered. Here,

- 7 -

however, plaintiff filed its motion for leave to file a second amended complaint on April 7, 2014, which was the day *before* the hearing on defendant's motion for summary judgment and 22 days *before* the trial court entered judgment on count II, the last remaining count at issue. After the April 8, 2014, hearing on defendant's motion for summary judgment, the court took the matter under advisement and set a briefing schedule as to plaintiff's motion for leave. Accordingly, we conclude the court's April 29, 2014, order granting summary judgment in favor of defendant was neither final nor appealable, as plaintiff's motion for leave to amend remained pending when that order was entered. See *In re M.M.*, 337 Ill. App. 3d 764, 771, 786 N.E.2d 654, 660 (2003) (an order is not final and appealable where the trial court retains jurisdiction over matters of substantial controversy). The fact plaintiff thereafter withdrew its motion for leave to file its second amended complaint and filed its motion for leave to file its third amended complaint does not change our conclusion, as the court granted plaintiff leave to do so on agreement of the parties.

¶ 42       In this case, the trial court entered the final order, which denied plaintiff's motion for leave to file its third amended complaint, on September 4, 2014. On September 17, 2014, 13 days later, plaintiff filed its notice of appeal. Accordingly, pursuant to Illinois Supreme Court Rule 303(a)(1) (eff. May 30, 2008), we conclude we have jurisdiction to hear plaintiff's appeal.

¶ 43       Having determined we have jurisdiction, we now turn to the merits of plaintiff's appeal.

¶ 44                    B. Count III of Plaintiff's Amended Complaint

¶ 45       Plaintiff argues the trial court erred in granting summary judgment in favor of defendant as to count III of its amended complaint, which sought a declaratory judgment holding as unlawful defendant's actions of levying and appropriating property-tax revenue after the estimated date of completion of the Plan and District.

¶ 46                              1. *Standard of Review*

¶ 47       Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). Where, as here, the parties file cross-motions for summary judgment, the parties "agree that only a question of law is involved and invite the court to decide the issues based on the record." *Pielet v. Pielet*, 2012 IL 112064, ¶ 28, 978 N.E.2d 1000. We review *de novo* the grant of summary judgment. *Id.* ¶ 30, 978 N.E.2d 1000. Additionally, to the extent our decision requires us to interpret the Act, our review is *de novo*. *Id.*

¶ 48                 2. *Plaintiff's May 2012 Motion for Summary Judgment*

¶ 49       Plaintiff first challenges the trial court's denial of its May 2012 motion for summary judgment. However, we decline to address this issue because (1) the parties later agreed to resolve count III by filing cross-motions for summary judgment, and (2) the question of law presented in both plaintiff's May 2012 motion and the parties' October 2013 cross-motions for summary judgment is identical. Accordingly, in the interest of judicial economy, we will address only the propriety of the court's order concerning the parties' cross-motions for summary judgment.

¶ 50                    3. *The Parties' October 2013 Cross-Motions*
                                *for Summary Judgment*

¶ 51        Plaintiff argues the trial court erred in granting summary judgment in favor of defendant because defendant had (1) committed the District's funds after its estimated date of completion, (2) levied and collected incremental tax revenue after the estimated date of completion, (3) appropriated this unlawfully levied and collected tax revenue, and (4) failed to refund the District's surplus to the overlapping taxing bodies. Plaintiff contends the above-described actions were in violation of the Act, thus warranting the entry of a declaratory judgment in its favor.

¶ 52                    a. Whether Public Act 91-478 Extended the Plan
                           and District's Estimated Date of Completion

¶ 53        The parties first dispute the "estimated date of completion" of the Plan and District. Plaintiff contends the estimated date of completion was December 21, 2009, as stated in ordinance No. 1989-189. Defendant contends the estimated date of completion was December 31, 2009, as the legislature had amended the section requiring the estimated date of completion to be not later than 23 years after the adoption of the ordinance establishing the Plan. We agree with plaintiff.

¶ 54        In 1986, when the Bloomington city council passed ordinance No. 1989-189, which established the Plan and District, section 3(i) of the Act, which defined "redevelopment plan," provided, in pertinent part:

> "No redevelopment plan shall be adopted by a municipality without *** (3) stating the estimated dates, which shall not be more than 23 years from the adoption of the ordinance approving the redevelopment project area, of completion of the redevelopment project and retirement of obligations incurred to finance redevelopment project costs ***." Ill. Rev. Stat. 1985, ch. 24, ¶ 11-74.4-3(i).

In accordance with this section, the Bloomington city council set the estimated date of completion for the Plan and District as December 21, 2009.

¶ 55        By the time plaintiff filed its amended complaint, in October 2011, the legislature had amended the definition of "redevelopment plan," which now states, in pertinent part:

> "No redevelopment plan shall be adopted unless a municipality complies with all of the following requirements:
>
> * * *
>
> (3) The redevelopment plan establishes the estimated dates of completion of the redevelopment project and retirement of obligations issued to finance redevelopment project costs. Those dates may not be later than the dates set forth under Section 11-74.4-3.5.
>
> A municipality may by municipal ordinance amend an existing redevelopment plan to conform to this paragraph (3) as amended Public Act 91-478 ***." 65 ILCS 5/11-74.4-3(n)(J)(3) (West 2010).

See Pub. Act 91-478, § 10 (eff. Nov. 1, 1999). Section 11-74.4-3.5 of the Act provides, in pertinent part:

> "(a) Unless otherwise stated in this Section, the estimated dates of completion of the redevelopment project and retirement of obligations issued to finance redevelopment project costs *** may not be later than December 31 of the year in which the payment to the municipal treasurer, as provided in subsection (b) of Section 11-74.4-8 of this Act, is to be made with respect to ad valorem taxes levied in the 23rd calendar year after the year in which the ordinance approving the redevelopment project area was adopted if the ordinance was adopted on or after January 15, 1981." 65 ILCS 5/11-74.4-3.5(a) (West 2010).

¶ 56    The plain language of above-cited statutory language reveals the amendment extending the estimated date of completion was not self-executing. Rather, a municipality seeking to take advantage of this provision is required under section 11-74.4-3 to adopt an ordinance amending its redevelopment plan to extend its estimated date of completion. 65 ILCS 5/11-74.4-3(n)(J)(3) (West 2010). In this case, defendant did not adopt an ordinance extending the Plan and District's estimated date of completion. Therefore, the estimated date of completion of the Plan and District remained December 21, 2009.

¶ 57                        b. Whether the Estimated Date of Completion
                              Is More Than an Estimate

¶ 58    The parties next dispute the meaning of "estimated dates of completion," which is found in section 11-74.4-3(n)(J)(3) of the Act (*id*.). According to plaintiff, the "estimated dates of completion" is the actual date of completion and no further activities in furtherance of the redevelopment plan may be taken after that date. Defendant, on the other hand, contends the estimated date of completion is just that–an *estimate*. We agree with defendant.

¶ 59    The Act does not define "estimated dates of completion," and we are not aware of any judicial decisions interpreting the phrase. The Act does not set forth a mandatory date of completion for redevelopment plans. Rather, pursuant to section 11-74.4-8 of the Act, a redevelopment plan and tax district terminate only upon the occurrence of a series of events, which include (1) the payment of all redevelopment project costs, (2) the retirement of obligations, (3) the distribution of any surplus pursuant to section 11-74.4-8, and (4) the final closing of the books and records of the redevelopment project area. 65 ILCS 5/11-74.4-8 (West 2010). This provision supports the conclusion a tax district does not cease to exist on some arbitrary date, within a 23-year range, selected by a municipality when it adopts its ordinance establishing a redevelopment plan and tax district. Rather, a tax district ceases to exist when the municipality complies with the terms of section 11-74.4-8.

¶ 60    Lending further support to our conclusion the "estimated dates of completion" are merely an estimate, and not an actual termination date of a tax district, is the Act's requirement a municipality "notify affected taxing districts prior to November 1 if the redevelopment project area is to be terminated by December 31 of that same year." *Id*. If the legislature were to have intended the estimated date of completion to serve as the actual date of completion for a redevelopment plan, this language would not be necessary. See *Slepicka v. Illinois Department of Public Health*, 2014 IL 116927, ¶ 14, 21 N.E.3d 368 (courts should not construe a statute in such a way as to render language therein superfluous).

¶ 61    Accordingly, we conclude the "estimated date of completion" is, just as the legislature stated, an estimate. Because we have determined the "estimated date of completion" was an estimate, and not the actual date of termination, defendant's actions of levying and collecting incremental taxes after the estimated date of completion and committing the District's funds on December 28, 2009, were not unlawful. Accordingly, the trial court did not err in granting summary judgment in favor of defendant on count III of plaintiff's amended complaint.

¶ 62                           4. *Plaintiff's Motion for Rehearing*

¶ 63    Plaintiff also argues the trial court erred in denying its motion for rehearing with respect to the parties' cross-motions for summary judgment as to count III. Plaintiff's brief contains only conclusory statements asserting (1) the court abused its discretion and (2) its denial of the motion for rehearing demonstrated error. Additionally, its argument on this issue fails to contain any citation to the pages of the record relied upon. Accordingly, plaintiff has forfeited this issue. See Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *Sanders v. City of Chicago*, 306 Ill. App. 3d 356, 366, 714 N.E.2d 547, 555 (1999) (finding the plaintiff forfeited an issue on appeal where its argument contained only a conclusory statement that the trial court erred "because 'no contrary verdict based upon the evidence could stand' ").

¶ 64    Even if plaintiff had properly presented an argument on the issue, we would find no error. Plaintiff filed its motion pursuant to section 2-1203 of the Civil Code (735 ILCS 5/2-1203 (West 2012)), asserting the trial court should grant rehearing on the parties' cross-motions for summary judgment "to allow the court to take into consideration documentary evidence of the understanding and intent of then [c]ity manager Tom Hamilton stated at a public hearing November 17, 1986." Essentially, plaintiff sought to present to the court "newly" discovered evidence.

¶ 65    When a party seeks reconsideration based on newly discovered evidence, the party must present a reasonable explanation for why the evidence was not available at the time of the original hearing. *Stringer v. Packaging Corp. of America*, 351 Ill. App. 3d 1135, 1141, 815 N.E.2d 476, 481 (2004). In *Gardner v. Navistar International Transportation Corp.*, 213 Ill. App. 3d 242, 248-49, 571 N.E.2d 1107, 1111 (1991), we explained the policy underlying this requirement, as follows:

> "Trial courts should not permit litigants to stand mute, lose a motion, and then frantically gather evidentiary material to show that the court erred in its ruling. Civil proceedings already suffer from far too many delays, and the interests of finality and efficiency *require* that the trial courts not consider such late-tendered evidentiary material, no matter what the contents thereof may be." (Emphasis in original.)

¶ 66    Here, neither plaintiff's motion for rehearing nor its argument on appeal provides any explanation as to why Hamilton's statement during the November 7, 1986, public hearing was not presented in its cross-motion for summary judgment. Accordingly, the trial court did not err by denying plaintiff's motion.

¶ 67                      C. Count II of Plaintiff's Amended Complaint

¶ 68    Plaintiff also argues the trial court erred in granting summary judgment in favor of defendant as to count II of its amended complaint, which sought an order compelling an equitable accounting of the District's fund. Specifically, plaintiff contends the court erred

- 11 -

because (1) defendant breached its fiduciary duty to plaintiff, (2) "no adequate remedy exists at law which provides a demonstrably equivalent substitute for an accounting due to [defendant's] failure to file accurate [Tax-Increment-Financing] Annual Reports," and (3) it showed a need for discovery of detailed information regarding the expenditure of public funds, which was magnified by defendant's failure to file "accurate [Tax-Increment-Financing] Annual Reports."

¶ 69                                      1. *Standard of Review*

¶ 70       As already stated, summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). Our review is *de novo*. *Pielet*, 2012 IL 112064, ¶ 30, 978 N.E.2d 1000.

¶ 71       "An accounting is a statement of receipts and disbursements" to and from a particular source. *Polikoff v. Levy*, 132 Ill. App. 2d 492, 499, 270 N.E.2d 540, 547 (1971). To sustain an action for an equitable accounting, the plaintiff must show "the absence of an adequate remedy at law and one of the following: (1) a breach of a fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *People ex rel. Hartigan v. Candy Club*, 149 Ill. App. 3d 498, 500-01, 501 N.E.2d 188, 190 (1986). Further, a trial court will not order an equitable accounting where to do so would be unnecessary. *Nieberding v. Phoenix Manufacturing Co.*, 31 Ill. App. 2d 350, 356, 176 N.E.2d 385, 387-88 (1961).

¶ 72                              2. *Plaintiff Cannot Establish It Lacks*
                                      *an Adequate Remedy at Law*

¶ 73       In this case, plaintiff is unable to establish it lacks an adequate remedy at law, which would invoke the equitable powers of the trial court. "For the remedy at law to be adequate[,] the remedy must be clear, complete, and as practical and efficient to the ends of justice and its prompt administration as an equitable remedy." *La Salle National Bank v. Refrigerated Transport Co.*, 165 Ill. App. 3d 899, 900, 520 N.E.2d 768, 769 (1987).

¶ 74       Count II of plaintiff's amended complaint sought an equitable accounting, which would identify and explain the receipt and disbursement of monies from the District's fund. As shown below, plaintiff had two avenues through which it could have, and did, receive the information it sought in count II of its amended complaint.

¶ 75       First, the Freedom of Information Act (FOIA) (5 ILCS 140/1 to 11.5 (West 2010)) provided plaintiff with an adequate remedy at law. Pursuant to section 2.5 of FOIA, "[a]ll records relating to the obligation, receipt, and use of public funds of the State, units of local government, and school districts are public records subject to inspection and copying by the public." 5 ILCS 140/2.5 (West 2010). Defendant, a unit of local government, would have been required to furnish the financial information regarding the District's fund had plaintiff requested it.

¶ 76       Plaintiff contends FOIA would not provide it with an adequate remedy because FOIA does not require a municipality to produce new documents detailing and accounting for its financial transactions in the District's fund; rather, FOIA requires municipalities only to furnish those

documents already in existence. See 5 ILCS 140/1 (West 2010). Because an accounting would have required defendant to produce new documents detailing the receipt and disbursement of the District's funds, plaintiff argues, FOIA offered it no recourse. We disagree.

¶ 77     Plaintiff's argument overlooks the fact the ledgers attached to the certified annual financial reports provided the information which plaintiff sought through an equitable accounting. These ledgers concerned the obligation, receipt, and use of public funds by a unit of local government, and therefore, would have been disclosed if asked for in a FOIA request. See 5 ILCS 140/2 (West 2010).

¶ 78     Second, when plaintiff initiated its lawsuit, it had the right through discovery to obtain all the information which would be contained in an equitable accounting. Pursuant to Illinois Supreme Court Rule 214 (eff. Jan. 1, 1996), plaintiff had the right to request the production of financial documents related to the District's fund. In fact, during discovery, plaintiff did make such a request and received all the information it would receive in an equitable accounting when defendant tendered copies of its ledgers and screenshots from its accounting software to plaintiff, which showed the receipts of and disbursements from the District's fund.

¶ 79     Moreover, an equitable accounting would have been unnecessary. Defendant had already tendered all financial information relevant to the District when it turned its discovery material over to plaintiff. The ledgers attached to the certified annual financial reports showed the receipt and disbursement of all monies from the District's fund. An equitable accounting of the District's fund would provide no more information than that which was already contained in the ledgers. See *Polikoff*, 132 Ill. App. 2d at 499, 270 N.E.2d at 547.

¶ 80                              3. *Certified Annual Financial Reports as an*
                        *Adequate Substitute for the Annual Reports*
                                    *Required by the Act*

¶ 81     Plaintiff contends the central issue concerning count II of its complaint is whether defendant's certified annual financial reports are an adequate substitute for a proper report filed under section 11-74.4-5(d) of the Act (65 ILCS 5/11-74.4-5(d) (West 2010)). We disagree.

¶ 82     Plaintiff's count II sought an order compelling defendant to perform an accounting of the District's fund. An accounting would not require defendant to provide all the information required by section 11-74.4-5(d) of the Act; rather, it would require defendant to tender a statement of the receipts and disbursements from the District's fund. See *Polikoff*, 132 Ill. App. 2d at 499, 270 N.E.2d at 547.

¶ 83     We conclude plaintiff's argument would be better suited in an action seeking an order compelling defendant to comply with section 11-74.4-5(d) of the Act. However, plaintiff did not request this relief in count II of its amended complaint. Instead, plaintiff sought an equitable accounting.

¶ 84     Accordingly, we conclude the trial court properly granted summary judgment in favor of defendant as to count II of plaintiff's amended complaint.

¶ 85                          D. Plaintiff's Motion for Leave to File
                                 Its Third Amended Complaint

¶ 86        Finally, plaintiff contends the trial court erred in denying its motion for leave to file its third amended complaint. We disagree.

¶ 87                                  1. *Standard of Review*

¶ 88        Pursuant to section 2-616(a) of the Civil Code, amendments to pleadings may be allowed on "just and reasonable terms" at any time before final judgment to enable the plaintiff to sustain the claim brought in the suit. 735 ILCS 5/2-616(a) (West 2012). "Generally, when a party asks to amend a complaint, leave to do so is freely given." *Keefe-Shea Joint Venture v. City of Evanston*, 364 Ill. App. 3d 48, 62, 845 N.E.2d 689, 701 (2005). Despite this liberal policy, a plaintiff's right to amend is not absolute. *Id.* We will not disturb the denial of a motion for leave to amend absent an abuse of discretion. *Id.* at 61, 845 N.E.2d at 701. An abuse of discretion occurs where no reasonable person would take the view adopted by the trial court. *Id.*

¶ 89        The supreme court has set forth four factors to be considered in determining whether the trial court abused its discretion in denying a plaintiff leave to amend. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 273, 586 N.E.2d 1211, 1215 (1992). The four factors are: "(1) whether the proposed amendment would cure the defective pleading; (2) whether other parties would sustain prejudice or surprise by virtue of the proposed amendment; (3) whether the proposed amendment is timely; and (4) whether previous opportunities to amend the pleading could be identified." *Id.* at 273, 586 N.E.2d at 1215-16. To be entitled to an order granting leave to amend, a party must meet all four *Loyola* factors. *I.C.S. Illinois, Inc. v. Waste Management of Illinois, Inc.*, 403 Ill. App. 3d 211, 220, 931 N.E.2d 318, 325 (2010).

¶ 90                          2. *Whether the Proposed Amendment Would*
                                 *Cure Defects in the Pleadings*

¶ 91        As to the first factor, whether the proposed amendment would cure defects in the complaint, plaintiff fails to present any argument as to how the proposed amendment would cure the defective pleading other than its conclusory statement that "[t]he proposed amendment would cure pleading defects found by the [t]rial [c]ourt to exist in the [a]mended [c]omplaint." Regardless of plaintiff's failure to present a proper argument on this factor (see Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *Sanders*, 306 Ill. App. 3d at 366, 714 N.E.2d at 555), in its order granting summary judgment as to count II of plaintiff's amended complaint, the trial court found plaintiff's pleadings were deficient in that they failed to allege either a breach of fiduciary duty or fraud, which is required where a plaintiff is seeking an equitable accounting. To cure this defect, plaintiff should have made at least one of these required allegations within the amended count II. Instead, in its proposed third amended complaint, plaintiff asserted two additional causes of action unrelated to count II, for fraud (count IV) and breach of fiduciary duty (count V), and sought relief–attorney fees pursuant to Illinois Supreme Court Rule 137 (eff. July 1, 2013)–independent of the relief sought in count II. Accordingly, we fail to see how this factor weighs in plaintiff's favor.

¶ 92                           3. *Whether Defendant Would Suffer Prejudice*

¶ 93        As to the second factor, whether defendant would sustain prejudice, we conclude defendant would suffer prejudice if plaintiff were allowed to file its third amended complaint. Here, at the time plaintiff sought leave to file its third amended complaint, the litigation had been pending for over four years and defendant has expended considerable resources defending the litigation. Further, the proposed counts IV and V asserted new causes of action and sought attorney fees pursuant to Rule 137. At no time prior to filing its motion for leave to file its third amended complaint did plaintiff ever seek attorney fees. If plaintiff were allowed to proceed on its third amended complaint, defendant would have to expend more resources to defend against these new causes of action. Accordingly, we fail to see how this factor weighs in plaintiff's favor.

¶ 94                          4. *Whether the Proposed Amendment Was Timely*

¶ 95        As to the third factor, plaintiff fails to present any argument as to how its proposed third amended complaint was timely other than its conclusory statement that "[t]he motion was timely filed before final judgment was entered in this cause." Regardless of plaintiff's failure to present a proper argument on this factor (see Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013); *Sanders*, 306 Ill. App. 3d at 366, 714 N.E.2d at 555), in this case, plaintiff filed its original complaint in April 2010, four years before it filed its motion seeking leave to file its second amended complaint. Additionally, plaintiff filed its amended complaint in October 2011, which was nearly 2½ years before it filed its motion seeking leave to file its second amended complaint.

¶ 96        Further, plaintiff filed its motion for leave to file its second amended complaint on April 7, 2014, which was the day before the hearing on defendant's motion for summary judgment as to count II was to be heard by the trial court. Then, after the court entered judgment in defendant's favor as to count II, the last remaining count at issue, plaintiff withdrew its motion for leave to file its second amended complaint and refiled a motion for leave to file a third amended complaint. Given the eleventh-hour filing of plaintiff's motion for leave, we fail to see how this factor weighs in plaintiff's favor.

¶ 97                        5. *Whether Plaintiff Had a Previous Opportunity to Amend*

¶ 98        As to the fourth factor, plaintiff contends it had only one other opportunity to amend its complaint. We agree. The deficiency in count II of plaintiff's amended complaint did not become apparent until defendant pointed out, in its motion for summary judgment as to count II, plaintiff had failed to allege either fraud or a breach of fiduciary duty. When the trial court adopted this reasoning in its April 29, 2014, order granting summary judgment in favor of defendant, plaintiff became aware of the deficiency and sought leave to further amend its complaint.

¶ 99           6. *The Trial Court Did Not Abuse Its Discretion in Denying Plaintiff's*
                    *Motion for Leave to File Its Third Amended Complaint*

¶ 100       Given our conclusion the trial court correctly weighed three of the four *Loyola* factors in defendant's favor, we conclude the court did not abuse its discretion in denying plaintiff's

motion for leave to file its third amended complaint. See *I.C.S. Illinois*, 403 Ill. App. 3d at 220, 931 N.E.2d at 325 (party requesting leave must meet all of the *Loyola* factors).

¶ 101                                    III. CONCLUSION

¶ 102          For the reasons stated, we affirm the trial court's judgment.

¶ 103          Affirmed.