2022 IL App (1st) 211314

No. 1-21-1314

Second Division
November 9, 2022

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| RN ACQUISITION, LLC, a Delaware Limited Liability Company, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) ) | |
| v. | ) ) | No. 19 L 12510 |
| PACCAR LEASING COMPANY, a Washington Corporation, | ) ) ) ) | Honorable Anna H. Demacopoulos Judge, presiding. |
| Defendant-Appellee. | ) | |

_____

JUSTICE COBBS delivered the judgment of the court, with opinion.
Justices Howse and Ellis concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff-Appellant, RN Acquisition, LLC, d/b/a Lakeshore Beverage (Lakeshore), filed suit against defendant-appellee, Paccar Leasing Company (Paccar), alleging that the parties' lease agreement required Paccar to pay a certain tax imposed by the City of Chicago on the lease of personal property. The circuit court granted judgment on the pleadings in favor of Paccar, finding that Paccar was not responsible for the tax in question under the terms of the lease. Lakeshore now appeals, and we affirm for the following reasons.

¶ 2                                 I. BACKGROUND

¶ 3     Paccar is in the business of leasing specialty vehicles and equipment. In 2008, Paccar entered into a "Vehicle Lease and Service Agreement" (Lease Agreement) with River North Sales & Services, LLC for the lease of certain vehicles, trailers, and related equipment. In 2013, Lakeshore, a beer distributor in the Chicagoland area, purchased River North's assets and assumed the Lease Agreement.

¶ 4     Relevant here, the Lease Agreement provides that:

"In accordance with Schedule B, [Paccar] will pay for the state motor vehicle license and inspection fees for each Vehicle for the licensed weight for the state in which it is domiciled *and pay the ad valorem tax* and Federal Heavy Vehicle Use Tax for each Vehicle, exclusive of any For Hire taxes, tags or permits." (Emphasis added.).

Additionally, Schedule A of the Lease Agreement includes a line item indicating that Paccar is responsible for the payment of "local sales tax."

¶ 5     The tax at the center of this appeal is the Chicago Personal Property Lease Transaction Tax (lease tax), which is levied on the lease or rental of personal property in Chicago, or on the privilege of using in Chicago personal property that was leased or rented outside the city. Chicago Municipal Code § 3-32-030(A) (added Dec. 15, 1992). The amount of the tax is determined by applying the rate of 9% to each lease or rental payment. *Id.* § 3-32-030(B). Further, "[i]t shall be the duty of each lessor to collect the tax *** from the lessee at the time of each lease or rental payment, and to remit the tax to the [City]." *Id.* § 3-32-070(A). However, "[t]he incidence of the tax and the obligation to pay the tax are upon the lessee of the personal property." *Id.* § 3- 32-030(A). Thus, "[i]n the event that a lessor fails to collect or remit the tax ***, the lessee shall be liable to the city

for the amount of such tax." *Id.* § 3-32-070(A). In such a case, "then the lessee shall file a return and pay the tax directly to the [City.]" *Id.* § 3-32-080(B).

¶ 6    In 2019, the City determined that Lakeshore was liable for nonpayment of the lease tax from the period of July 2011 through June 2017 in the amount of $183,542.81, which included $67,317.81 in interest. Lakeshore paid this balance, as well an additional $35,084.53 for lease taxes accrued from July 2017 through June 2019.

¶ 7    On June 11, 2019, Lakeshore's counsel sent Paccar a letter demanding that Paccar compensate Lakeshore for the amounts it had paid. However, Paccar refused, maintaining that it had "no responsibility for the taxes identified in [Lakeshore's] letter."

¶ 8    On November 12, 2019, Lakeshore filed a two-count complaint against Paccar over payment of the lease tax. Count I alleged breach of contract under the theory that the lease tax was an ad valorem tax and a local sales tax, both of which Paccar were required to pay under the terms of the Lease Agreement. Relatedly, count II sought a declaratory judgment that Paccar was responsible for paying the lease tax going forward.

¶ 9    Paccar filed a motion to dismiss the complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2020)), arguing that the lease tax is neither an ad valorem nor sales tax. Lakeshore filed a response, contending, among other things, that Paccar's motion was procedurally improper because it did not raise an affirmative matter that defeated the claims. See *id.* (providing for involuntary dismissal where a complaint is "barred by other affirmative matter avoiding the legal effect of or defeating the claim"). Following a hearing on the matter, the circuit court denied the motion to dismiss without prejudice.[1]

---

[1]The transcript of the hearing does not appear in the record on appeal.

¶ 10     After answering the complaint, Paccar then filed a motion for judgment on the pleadings, pursuant to section 2-615 of the Code of Civil Procedure (*id.* § 2-615). This motion raised substantively identical arguments to those in Paccar's motion to dismiss.

¶ 11     While the motion for judgment on the pleadings was pending, Lakeshore served Paccar with several written discovery requests pertaining to Paccar's interpretation of the Lease Agreement. In response, Paccar filed a motion to stay discovery, arguing that (1) discovery was unnecessary to resolve the motion for judgment on the pleadings and (2) Lakeshore's discovery requests would become moot if the court entered judgment on the pleadings. The circuit court granted Paccar's motion over Lakeshore's objection.

¶ 12     Subsequently, after hearing oral argument, the circuit court granted Paccar's motion for judgment on the pleadings and entered judgment in favor Paccar.[2] This appeal followed.

¶ 13                              II. ANALYSIS

¶ 14                       A. Judgment on the Pleadings

¶ 15     On appeal, Lakeshore first challenges the circuit court's order entering judgment on the pleadings in favor of Paccar. "In ruling on a motion for judgment on the pleadings, the court will consider only those facts apparent from the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record." *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). The court will also take all well-pleaded facts in the complaint and reasonable inferences drawn therefrom as true. *Id.* Judgment on the pleadings is proper where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *Id.* We review a grant of judgment on the pleadings *de novo*. *Id.*

---

[2]The transcript of the hearing does not appear in the record on appeal.

¶ 16                                    1. Ad Valorem Tax

¶ 17    In this case, Lakeshore primarily argues that the Lease Agreement required Paccar to pay the lease tax because it is an ad valorem tax. Thus, resolution of this appeal requires us to interpret the meaning of the phrase "ad valorem tax," as used in the Lease Agreement. A court's goal in construing a contract is to ascertain and give effect to the intention of the parties, the best indicator of which is the language of the contract. *Id.* at 393. Because the contract itself does not define "ad valorem," we will assign it its plain, ordinary, and popular meaning. *Id.* Where the language of a contract is facially unambiguous, we construe its meaning without resorting to extrinsic evidence. *Morningside North Apartments I, LLC v. 1000 N. La Salle, LLC*, 2017 IL App (1st) 162274, ¶ 15.

¶ 18    From the Latin for " 'according to the value,' " Black's Law Dictionary (11th ed. 2019) defines "ad valorem" as "(Of a tax) proportional to the *value* of the thing taxed." (Emphasis added.). Similarly, Black's Law Dictionary (11th ed 2019) also defines "ad valorem tax" as "[a] tax imposed proportionately on the *value* of something (esp. real property), rather than on its quantity or some other measure." (Emphasis added.).

¶ 19    Lakeshore contends that the lease tax meets these definitions (and similar definitions from other sources) because it is proportional to the "value of a transaction," in this case the lease of the vehicles. The problem with Lakeshore's position, however, is that it falsely equates "value" with "price." Although, to be sure, "value" and "price" are related concepts, they are not identical. See, *e.g.*, *1472 N. Milwaukee, Ltd. v. Feinerman*, 2013 IL App (1st) 121191, ¶ 16 (differentiating "contract price" and "fair market value"). The crucial difference is that the price of an item is an objective amount agreed upon by the parties to a contract, whereas the value of an item will typically require a third-party assessment. Thus, "[t]he essential characteristic of an ad valorem tax is that the tax is levied according to the value of property as determined by an assessment or

appraisal." 71 Am. Jur. 2d *State and Local Taxation* § 18 (2012); accord 71 Am. Jur. 2d *State and Local Taxation* § 20 (1973) ("[A]n valorem tax *** requires the intervention of assessors or appraisers to estimate the value of such property before the amount due from each taxpayer can be determined.").

¶ 20    Here, the lease tax is proportional to the contract price, not value. This is illustrated by the fact that the tax does not depend on any assessment or appraisal to determine the lease's "value." Instead, the tax is calculated merely by applying the rate to the price of each lease payment. Because the lease tax is not assessed "according to the value," it is by definition not an ad valorem tax. *Continental Illinois National Bank & Trust Co. v. Zagel*, 78 Ill. 2d 387, 411-12 (1979) ("Since the method of taxation under the [replacement tax act] does not assign a cash value to utility property and then levy a tax on that value, it does not amount to an *ad valorem* mode of taxation.").

¶ 21    We further note that both parties discuss the impact, if any, of the Illinois Constitution's prohibition against ad valorem personal property taxes. Specifically, section 5(c) of article IX provides:

> "On or before January 1, 1979, the General Assembly by law shall abolish
> all ad valorem personal property taxes and concurrently therewith and thereafter shall
> replace all revenue lost by units of local government and school districts as
> a result of the abolition of ad valorem personal property taxes subsequent to January 2,
> 1971." Ill. Const. 1970, art. IX, § 5(c).

¶ 22    Naturally, Paccar cites this provision as evidence that the lease tax is not an ad valorem tax because, if it were, it would be unconstitutional. Lakeshore, on the other hand, attempts to reconcile its position with section 5(c) by arguing that, although the lease tax is ad valorem, it is a tax on the *transaction* of leasing personal property, rather than on the personal property itself.

¶ 23    Interestingly, though, Lakeshore appears to concede that the language of section 5(c) " 'simply abolish[ed] the method of taxing personal property by assigning a cash value to it and then taxing that cash value.' " (quoting 3 Record of Proceedings, Sixth Illinois Constitutional Convention 2038 (statements of Delegate S. Johnson)). Lakeshore's concession is correct since, as previously explained, that is exactly what "ad valorem" means. See generally *Client Follow-Up Co. v. Hynes*, 75 Ill. 2d 208 (1979*); Elk Grove Engineering Co. v. Korzen*, 55 Ill. 2d 393 (1973). It is unclear to us how Lakeshore squares its interpretation of "ad valorem" in regard to the Lease Agreement with the language and admitted effect of section 5(c). In any event, because we find that the lease tax is not an ad valorem tax, we need not express any opinion as to its constitutionality. See *Johnson v. Department of State Police*, 2020 IL 124213, ¶ 13 (reviewing courts should decide a case on constitutional grounds only as a last resort).

¶ 24    Finally, we are not persuaded by Lakeshore's argument that Paccar's interpretation renders parts of the Lease Agreement meaningless. Paccar counters this point by contending that the Lease Agreement is a form contract used for leases in many different states. Paccar's contention is borne out by the language of the Lease Agreement. Additionally, the Lease Agreement contains a "Savings Clause" which states that "[i]f any provision of this Agreement is invalid under the laws of any state when used, such provision shall be deemed not to be a part of this Agreement in such state, but shall not invalidate any other provision hereof." Thus, the reference to ad valorem taxes in the Lease Agreement is not so much meaningless as it is merely inapplicable to the specific lease in question. Accordingly, Lakeshore's argument is without merit.

¶ 25                                 2. Local Sales Tax

¶ 26    Alternatively, in a rather undeveloped argument, Lakeshore contends that Paccar was also responsible for paying the lease tax because it is a "local sales tax" within the meaning of the Lease

Agreement. For support, Lakeshore essentially relies solely on the fact that the lease tax is "measured as a percentage of the lease price." However, we are unpersuaded by Lakeshore's definition of "sales tax." "[A] sales tax is a tax on the sale of tangible personal property." *American Beverage Ass'n v. City of Chicago*, 404 Ill. App. 3d 682, 684 (2010) (citing *Mr. B's, Inc. v. City of Chicago*, 302 Ill. App. 3d 930, 934 (1998)). For example, the tax commonly known as the Chicago sales tax is "imposed upon all persons engaged in the business of selling tangible personal property, other than tangible personal property titled or registered with an agency of Illinois government, at retail in the City of Chicago[.]" Chicago Municipal Code § 3-40-010(a) (added July 1, 2005). In contrast, the lease tax concerns leases and rentals, not sales. Thus, we agree with the circuit court that the lease tax is not a sales tax.

¶ 27    As we have determined that the lease tax is neither an ad valorem tax nor a local sales tax, there is no basis to conclude that Paccar was responsible for the cost of the lease tax under the Lease Agreement. We therefore agree with the circuit court that Paccar was entitled to judgment as a matter of law on this issue.

¶ 28                          3. Failure to Collect and Remit

¶ 29    Lakeshore further argues that, even if the lease tax is neither an ad valorem nor local sales tax, Paccar still breached the Lease Agreement by failing to collect and remit the tax. Paccar argues that Lakeshore has forfeited the issue by not including this theory in the complaint. A review of the record shows that the complaint did allege, as a factual matter, that "Paccar did not collect or remit the [lease tax], as was its obligation under the [Lease Agreement] and the Chicago Municipal Code." Additionally, Lakeshore extensively raised the argument in response to both Paccar's motion to dismiss the complaint and motion for judgment on the pleadings. We therefore find that Lakeshore did not forfeit the issue. *Cf. Evanston Insurance Co. v. Riseborough*, 2014 IL 114271,

¶ 36 ("[Plaintiff] failed to raise the argument in its response to defendants' motion to dismiss; thus, it has forfeited the argument.").

¶ 30    That being said, Lakeshore's argument is without merit. Lakeshore contends that it was harmed by Paccar's actions because it was forced to pay interest it otherwise would not have if Paccar had collected and remitted the lease taxes on time. However, the lease tax is clear that Lakeshore had an independent duty to timely pay the tax regardless of Paccar's actions. Chicago Municipal Code § 3-32-080(B) (added Dec. 15, 1992) ("If a lessor fails to collect the tax imposed by this chapter from a lessee, then the lessee shall file a return and pay the tax directly to the [City] on or before the date required by subsection 3-32-080(A)."). Thus, the fact that Lakeshore incurred interest expenses is not attributable to Paccar.

¶ 31                    B. Motion to Stay Discovery

¶ 32    Finally, Lakeshore argues that the circuit court erred in granting Paccar's motion to stay discovery pending the resolution of the motion for judgment on the pleadings. In particular, Lakeshore contends that because the Lease Agreement was ambiguous as to the meanings of ad valorem and local sales taxes, the court should have allowed discovery to determine the intent of the parties before ruling on the motion for judgment on the pleadings.

¶ 33    A circuit court has broad discretionary powers in ruling on discovery matters, and the court's decisions on such matters will not be disturbed on appeal, absent an abuse of that discretion. *Adkins Energy, LLC v. Delta-T Corp.*, 347 Ill. App. 3d 373, 380-381 (2004). An abuse of discretion occurs only where the court's decision is "arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." *Thomas v. Weatherguard Construction Co.*, 2018 IL App (1st) 171238, ¶ 53.

¶ 34    Here, we find no abuse of discretion. First, for reasons previously explained, the relevant terms of the Lease Agreement are clear and unambiguous. A contract is not rendered ambiguous merely because the parties disagree on its meaning. *Eckhardt v. The Idea Factory, LLC*, 2021 IL App (1st) 210813, ¶ 31. Second, the discovery requests were essentially irrelevant to the motion for judgment on the pleadings, as a court may not consider extrinsic evidence in ruling on such a motion. *M.A.K. v. Rush-Presbyterian-St.-Luke's Medical Center*, 198 Ill. 2d 249, 264 (2001). Accordingly, the circuit court did not abuse its discretion in staying discovery.

¶ 35                                    III. CONCLUSION

¶ 36    For the reasons stated, we affirm the judgment of the circuit court.

¶ 37    Affirmed.

***RN Acquisition, LLC v. Paccar Leasing Co.*, 2022 IL App (1st) 211314**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 19-L-12510; the Hon. Anna H. Demacopoulos, Judge, presiding. |
| **Attorneys for Appellant:** | Casey Grabenstein and Elizabeth A. Thompson, of Saul Ewing Arnstein & Lehr LLP, of Chicago, for appellant. |
| **Attorneys for Appellee:** | David S. Ruskin and Julianne M. Dailey, of Horwood Marcus & Berk Chtrd., of Chicago, for appellee. |