NOTICE
Decision filed 12/19/23. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2023 IL App (5th) 220459

NO. 5-22-0459

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE VILLAGE OF SHILOH, an Illinois Municipal Corporation, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 21-MR-217 |
| THE COUNTY OF ST. CLAIR, ILLINOIS; THOMAS HOLBROOK, in His Official Capacity as St. Clair County Clerk; BELLEVILLE HIGH SCHOOL DISTRICT 201; O'FALLON HIGH SCHOOL DISTRICT 203; O'FALLON SCHOOL DISTRICT 90; O'FALLON TOWNSHIP; O'FALLON TOWNSHIP ROAD DISTRICT; O'FALLON, SHILOH, CASEYVILLE FIRE PROTECTION DISTRICT; SHILOH SCHOOL DISTRICT #5; SHILOH VALLEY TOWNSHIP; SHILOH VALLEY TOWNSHIP ROAD DISTRICT; ST. CLAIR TOWNSHIP; ST. CLAIR TOWNSHIP ROAD DISTRICT; SWIC COMMUNITY COLLEGE DISTRICT 522; and WHITESIDE SCHOOL DISTRICT 115, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) ) | Honorable Julie K. Katz, |
| Defendants-Appellees. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justice Boie concurred in the judgment and opinion.
Presiding Justice Vaughan specially concurred, with opinion.

1

**OPINION**

¶ 1    The plaintiff, the Village of Shiloh (Shiloh), appeals the June 27, 2022, order of the circuit court of St. Clair County that granted the motion to dismiss filed by the defendants, the County of St. Clair, Illinois (St. Clair County) and Thomas Holbrook, in his official capacity as St. Clair County Clerk. For the following reasons, we reverse the June 27, 2022, order and remand for further proceedings.

¶ 2                                   I. BACKGROUND

¶ 3    On September 9, 2021, Shiloh filed a complaint against St. Clair County and Holbrook petitioning for a writ of *mandamus* requiring that alleged incremental taxes owed to Shiloh through December 31, 2022, be paid and for a declaratory judgment regarding payments and alleged violations of the Tax Increment Allocation Redevelopment Act (Act) (65 ILCS 5/11-74.4.-1 *et al.* (West 2020)). On December 6, 2021, the defendants filed a combined motion to dismiss under sections 2-615 and 2-619 of the Code of Civil Procedure (735 ILCS 5/2-615, 2-619 (West 2020)). No ruling on the motion to dismiss appears in the record on appeal.

¶ 4    On February 10, 2022, Shiloh filed its first amended complaint. The first amended complaint added the following defendants via joinder due to their status as necessary parties: Belleville High School District 201; O'Fallon High School District 203; O'Fallon School District 90; O'Fallon Township; O'Fallon Township Road District; O'Fallon, Shiloh, Caseyville Fire Protection District;[1] Shiloh School District #5; Shiloh Valley Township; Shiloh Valley Township Road District; St. Clair Township; St. Clair Township Road District; SWIC Community College District 522; and Whiteside School District 115. The first amended complaint contained the same allegations as the original complaint.

_____

[1]The record on appeal does not contain an entry of appearance in the circuit court for O'Fallon, Shiloh, Caseyville Fire Protection District.

¶ 5    Count I and count III of the first amended complaint sought a petition for a writ of *mandamus* against St. Clair County (count I) and Holbrook (count III). The allegations were the same for each of these counts. The plaintiff alleged that it established a tax increment finance district (TIF) by a village ordinance passed in May 1998, referred to as TIF A. The plaintiff established another TIF by village ordinance passed in November 1998, referred to as TIF B. The plaintiff asserted that St. Clair County and Holbrook were required to collect and pay incremental taxes to the plaintiff through December 31, 2022, pursuant to section 11-74.4-3.5 of the Act (65 ILCS 5/11-74.4-3.5 (West 2020)).

¶ 6    Count II and count IV of the first amended complaint sought a declaratory judgment that St. Clair County (count II) and Holbrook (count IV) are in violation of the Act. The plaintiff repeated and realleged the allegations of count I in count II and IV. Additionally, the plaintiff alleged that it is entitled to appropriate tax increment funds through December 31, 2022, and that St. Clair County and Holbrook are wrongfully withholding said incremental taxes prior to the expiration of TIF A and TIF B. The plaintiff alleged that it would be damaged by the refusal of the payments as projects in TIF A and TIF B will be unfinished.

¶ 7    On April 27, 2022, the defendants, St. Clair County and Holbrook, filed a motion to dismiss the first amended complaint. On April 28, 2022, the defendants, St. Clair County and Holbrook, filed an amended motion to dismiss the first amended complaint pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2020)). The amended motion to dismiss alleged the first amended complaint should be dismissed because "no provision of the Tax Increment Allocation Redevelopment Act (65 ILCS 5/11-74.4-1 *et seq.*) contemplates a 24th year of incremental taxes for the Village of Shiloh TIF A and TIF B." Additionally, the amended motion to dismiss asserted:

"4. The fact remains that the County and Clerk Holbrook have fully-complied with Tax Increment Allocation Redevelopment Act (65 ILCS 5/11-74.4-1 *et seq.*) in that the County already executed, collected and distributed incremental tax revenue for Plaintiff's TIF District #1 for 23 years, from tax year 1998 (payable in 1999) through tax year 2020 (payable in 2021). (See Exhibit A, *Affidavit of Thomas Holbrook*). Accordingly, in the obvious absence of any statutory right beyond such payments, Plaintiff's First Amended Complaint should be dismissed with prejudice under Section 2-619 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619)."

¶ 8 On May 12, 2022, the plaintiff filed its response to the amended motion to dismiss. The plaintiff argued "that while a TIF's life expectancy is 23 years, the last payment comes in the 24th year, because the property must be assessed in the 23rd year as well." Additionally, the response argues mutual mistake, an argument that has been abandoned on appeal. St. Clair County and Holbrook filed a reply on May 16, 2022, that argued that "an extension of estimated dates of completion for the redevelopment project and retirement of obligations thereof under Section 11-74.4-3.5(a) does not extend the TIF payments to the municipality."

¶ 9 A hearing on the amended motion to dismiss was held on May 17, 2022. During argument, counsel for St. Clair County and Holbrook argued *inter alia* that a limit of 23 payments applies to TIFs and because 23 payments have been made, the complaint should be dismissed with prejudice. Further, counsel argued, "I don't think that the necessary elements can be established for *mandamus* or declaratory judgment and the county and its clerk would respectively request this Court dismiss plaintiff's first amended complaint pursuant to Section 2-619 with prejudice."

¶ 10    Counsel for plaintiff[2] argued *inter alia* "we accept that we are only going to get twenty-three payments." Plaintiff's counsel argued that the first payment made in 1999 was in error and maintained that plaintiff is entitled to a payment in 2022 for the taxes levied in 2021.

¶ 11    During the hearing, the circuit court stated that it agreed that the plaintiff had a legal tangible interest. Additionally, the circuit court stated "that if I believe that the county complied with the statute properly and didn't improperly pay the first payment that that's going to be a dismissal with prejudice." The circuit court requested the parties provide proposed orders.

¶ 12    On June 27, 2022, the circuit court entered an order dismissing the plaintiff's first amended complaint with prejudice pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)). The June 27, 2022, order contains word-for-word sections of the amended motion to dismiss. This timely appeal followed.

¶ 13    On appeal, Shiloh urges us to find the Fourth District opinion in *Devyn Corp. v. City of Bloomington*, 2015 IL App (4th) 140819, to be analogous authority. Shiloh argues this case supports the reversal of the dismissal order.

¶ 14    St. Clair County and Holbrook first argue on appeal that forfeiture should apply. They assert that Shiloh's response to the amended motion to dismiss solely argued a reformation theory based upon an alleged mutual mistake. Additionally, they allege that Shiloh's revised brief "asserts all new arguments not previously raised in the Circuit Court." Next, St. Clair County and Holbrook argue that the Act does not contemplate a twenty-fourth year or more of tax increment allocation financing for TIF A and TIF B. They argue that Shiloh "is only entitled to 23 annual extensions, collections and distributions of incremental tax revenue for TIF A and TIF B."

---

[2]Appellate counsel is not the same counsel that represented plaintiff in the circuit court.

5

¶ 15                                II. ANALYSIS

¶ 16                                A. Forfeiture

¶ 17    St. Clair County and Holbrook argue that Shiloh forfeited the issue it has raised on appeal by failing to assert it in the circuit court. They assert that Shiloh only argued a reformation theory in the circuit court.

¶ 18    Shiloh's response to the amended motion to dismiss argues *inter alia* that "while a TIF's life expectancy is 23 years, the last payment comes in the 24th year, because the property must be assessed in the 23rd year as well." This is the same issue that Shiloh is presenting on appeal. We find that forfeiture did not occur in this case.

¶ 19    However, even if we found that Shiloh did forfeit an issue, "forfeiture is a limitation on the parties and not on the appellate court." *Village of New Athens v. Smith*, 2021 IL App (5th) 200257, ¶ 22. When it is necessary to obtain a just result or to maintain a sound body of precedent, we may overlook forfeiture. *Id.* Assuming, *arguendo*, that forfeiture occurred here, we choose, in the interest of maintaining a sound body of precedent, to overlook it.

¶ 20                        B. Dismissal of First Amended Complaint

¶ 21    A section 2-619 motion "admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). A motion to dismiss pursuant to section 2-619 presents a question of law which is reviewed *de novo*. *Id.* The question of law to be resolved is whether Shiloh is entitled to tax increment financing payments for 2021, which would be paid in 2022.

¶ 22    We find that *Devyn*, 2015 IL App (4th) 140819, is analogous to the facts in the present matter and relevant to our disposition of this case. In *Devyn*, the City of Bloomington created a TIF district on December 22, 1986. *Id.* ¶ 9. Bloomington received its first distribution of

6

incremental taxes in 1987 for those taxes levied in 1986. *Id.* ¶ 12. Bloomington received its final distribution of incremental taxes in 2010 for those taxes levied in 2009. *Id.* A taxpayer challenged the final payment asserting that it was not permitted beyond the twenty-third year. *Id.* ¶ 17.

¶ 23 The trial court in *Devyn* noted:

"[T]he language in section 11-74.4-3.5 of the Act (65 ILCS 5/11-74.4-3.5 (West 2010)), which states the estimated date of completion of a redevelopment plan 'may not be later than December 31 of the year in which the payment to the municipal treasurer *** is to be made with respect to ad valorem *taxes levied in the 23rd calendar year after the year in which the ordinance approving the* [*District*] *was adopted* if the ordinance was adopted on or after January 15, 1981.' " (Emphasis added.) *Id.* ¶ 24.

This statutory language is applicable to the present matter pursuant to Shiloh's adoption of Public Act 91-478 (eff. Nov. 1, 1999).

¶ 24 The *Devyn* court found that Bloomington's estimated date of completion was not amended pursuant to Public Act 91-478 because it did not adopt the ordinance. This left Bloomington's estimated date of completion as December 21, 2009. *Devyn*, 2015 IL App (4th) 140819, ¶ 56. The *Devyn* court found that "the estimated date of completion is just that—an *estimate*." (Emphasis in original.) *Id.* ¶ 58. *Devyn* found that since Bloomington adopted the ordinance establishing the TIF after January 15, 1981, those taxes collected in 2010 that were levied before the expiration of the plan and District on December 31, 2009, were lawful. *Id.* ¶ 61. Bloomington received a total of 24 distributions pursuant to the TIF.

¶ 25 The facts in the present matter are similar to those in *Devyn*. Shiloh adopted the ordinance creating TIF A in May 1998 and the ordinance creating TIF B in November 1998. St. Clair County distributed the first incremental taxes from these TIFs in 1999 for those taxes levied in 1998. St.

7

Clair County made 23 yearly distributions of incremental taxes through 2021, for those taxes levied in 2020. After making the payment in 2021, for taxes levied in 2020, St. Clair County and Holbrook took the position that only 23 payments are allowed because the life of a TIF district is limited to 23 years.

¶ 26    Although it is true that the life of a TIF district is limited to 23 years (see *Village of Arlington Heights v. Pappas*, 2016 IL App (1st) 151802, ¶ 5), our research has not revealed any authority which has held that the Act specifically limits the distributions to a total of 23, and *Devyn* refutes this with its finding that the twenty-fourth distribution was lawful under section 11-74.4-3.5 of the Act (65 ILCS 5/11-74.4-3.5 (West 2020)) under the circumstances of that case. As in *Devyn*, in this case the life of the TIF districts in question did not exceed the 23-year limitation, and therefore—also as in *Devyn*—the fact that 24 payments were required, rather than 23, does not mean that a violation of the Act occurred. Accordingly, we find that the circuit court erred in granting the motion to dismiss with prejudice.

¶ 27                                    C. Necessary Parties

¶ 28    The parties did not mention the absence of O'Fallon, Shiloh, Caseyville Fire Protection District. It was determined in the circuit court that certain necessary parties needed to be joined; however, it appears that one such party was not a part of the case prior to the dismissal order.

> "A necessary party is one whose presence is required in the litigation for any one of three reasons: (1) to protect an interest that the party has in the subject matter of the controversy that a judgment might materially affect in the party's absence, (2) to reach a decision that will protect the interests of those who are before the court, or (3) to enable the court to decide the controversy completely." *McNeil v. Ketchens*, 397 Ill. App. 3d 375, 391 (2010).

8

¶ 29    In this case, the circuit court's order that dismissed the first amended complaint did not materially affect O'Fallon, Shiloh, Caseyville Fire Protection District. As such, the absence of this party is not a cause for reversal. *Id.* at 392. On remand, the parties should endeavor to serve and include all necessary parties.

¶ 30                                  III. CONCLUSION

¶ 31    For the foregoing reasons, we reverse the June 27, 2022, order, and remand for further proceedings.

¶ 32    Reversed and remanded.

¶ 33    PRESIDING JUSTICE VAUGHAN, specially concurring:

¶ 34    I write separately to address the majority's reliance on the holding in *Devyn*, 2015 IL App (4th) 140819. Notably, before the trial court, neither party disputed the 23-year limitation associated with the two TIF districts at issue here. The Village of Shiloh's argument was couched in "mutual mistake"[3] and contended the first TIF district payment was erroneously issued in 1999 and should not have been issued until 2000. The Village of Shiloh did not request an additional (or twenty-fourth) year of payments. The parties essentially disputed when the 23-year TIF payments should begin and end. Conversely, on appeal, the Village of Shiloh now contends it is entitled to a twenty-fourth year of payments relying on *Devyn*, and my colleagues find such argument has merit. I disagree and find that *Devyn*'s allowance of 24 years of incremental real estate tax revenues is contrary to law and extension of *Devyn*'s holding to the case at bar is equally infirm. However, I agree that the trial court's order granting St. Clair County's motion to dismiss was in error.

---

[3]A "mutual mistake" is one in which the contracting parties labor "under the same misconception. [Citation.] In other words, the parties are in actual agreement but the agreement in its written form does not express the parties' true intent." *Danhauer v. Danhauer*, 2013 IL App (1st) 123537, ¶ 29.

¶ 35    *Devyn* addressed the Bloomington city council's TIF ordinance passed on December 22, 1986. *Id.* ¶ 9. The ordinance listed an estimated completion date for the redevelopment project and retirement of its obligation as December 21, 2009. *Id.* No ordinance amending the estimated date of completion was ever passed. *Id.* The TIF district "received its first distribution of incremental-property-tax revenues in 1987, for those taxes levied in 1986, and its final distribution of incremental-property-tax revenues in 2010, for those taxes levied in 2009." *Id.* ¶ 12. In 2009, Bloomington determined that "approximately $1.9 million would be available in the District's fund on or before December 2010" and held a "council work session" in which it reviewed various project proposals and created a priority list for the proposed projects. *Id.* ¶ 13. On November 9, 2009, the Bloomington city council adopted a resolution setting the priority list for the final year of the plan and district. *Id.* On December 28, 2009, the city council approved contracts and committed District funds for projects in accordance with the priority list. *Id.* ¶ 14. In 2010, after Bloomington deposited the funds from property taxes levied in 2009, it paid for the final projects approved at the December 28, 2009, city council meeting, and thereafter Devyn Corporation filed a three-count complaint against the City of Bloomington. *Id.* ¶¶ 15-17.

¶ 36    Relevant here is Devyn Corporation's third count that requested a declaratory judgment based on allegations of unlawful levy, collection, and payment of incremental revenues beyond the termination date of the TIF district. *Id.* ¶ 17. In *Devyn*, the trial court granted summary judgment on this count finding the estimated date of completion served only as an estimate and therefore " 'did not act as a bar to [defendant] levying property taxes through the remainder of 2009, and subsequently collecting those taxes in 2010.' " *Id.* ¶ 24. The trial court found the ordinances were silent as to an actual expiration date and relied on the amended language in section 11-74.4-3.5 of the Act that stated "the estimated date of completion of a redevelopment plan 'may

10

not be later than December 31 of the year in which the payment to the municipal treasurer *** is to be made with respect to ad valorem[4] taxes levied in the 23rd calendar year after the year in which the ordinance approving the [District] was adopted if the ordinance was adopted on or after January 15, 1981.' " *Id.* (quoting 65 ILCS 5/11-74.4-3.5 (West 2010)).

¶ 37 On appeal, however, the court noted that Bloomington did not modify its original ordinance creating the TIF district and found the legislative amendment in section 11-74.4-3.5(a) (65 ILCS 5/11-74.4-3.5(a) (West 2010))—extending the estimated completion date—was inapplicable because Bloomington did not pursue amendment of the estimated completion date pursuant to section 11-74.4-3(n)(j)(3) (*id.* § 11-74.4-3(n)(J)(3)). *Devyn*, 2015 IL App (4th) 140819, ¶ 56. The court found, the relevant statute at the time the ordinance was adopted in *Devyn* stated:

> " 'No redevelopment plan shall be adopted by a municipality without *** (3) stating the estimated dates, which shall not be more than 23 years from the adoption of the ordinance approving the redevelopment project area, of completion of the redevelopment project and retirement of obligations incurred to finance redevelopment project costs ***. ' Ill. Rev. Stat. 1985, ch. 24, ¶ 11-74.4-3(i)." *Id.* ¶ 54.

Thereafter, the court (1) determined the estimated date of completion related to the TIF district was December 21, 2009, as opposed to December 31, 2009; (2) found that an estimated date of completion was merely an estimate; and (3) held that Bloomington's actions of levying and collecting incremental taxes after the estimated date of completion and committing the TIF district funds on December 28, 2009, were not unlawful. *Id.* ¶¶ 56, 61.

---

[4]"From the Latin for ' "according to the value," ' Black's Law Dictionary (11th ed. 2019) defines '*ad valorem*' as '(Of a tax) proportional to the *value* of the thing taxed.' " (Emphasis added.) *RN Acquisition, LLC v. Paccar Leasing Co.*, 2022 IL App (1st) 211314, ¶ 18. "Similarly, Black's Law Dictionary (11th ed. 2019) also defines '*ad valorem* tax' as '[a] tax imposed proportionately on the *value* of something (esp. real property), rather than on its quantity or some other measure.' " (Emphasis added.) *Id.*

¶ 38    While I agree that an "estimated date of completion" is simply an estimate, the words are couched in statutorily limiting language. Therefore, in the case at bar, the estimated date of completion must "not be later than December 31 of the year in which the payment to the municipal treasurer *** is to be made with respect to ad valorem taxes levied in the 23rd calendar year after the year in which the ordinance approving the redevelopment project area was adopted." 65 ILCS 5/11-74.4-3.5(a) (West 2020). This language clearly limits the life of a TIF district.

¶ 39    I also agree that the estimated date of completion may not be an actual termination date for the TIF project as stated in *Devyn*. See *Devyn*, 2015 IL App (4th) 140819, ¶¶ 59-61. For example, a TIF district may terminate earlier than the estimated date of completion. However, I disagree that the estimated date of completion may be extended beyond the 23 years set forth in the applicable statute. In order to extend the estimated date of completion beyond the 23 years contemplated by the applicable statute, the General Assembly must approve the extension. See 65 ILCS 5/11-74.4-3.5(b)-(g) (West 2020). Neither municipal action nor judicial proclamation will suffice.[5] Accordingly, I disagree with *Devyn*'s holding that "defendant's actions of levying and collecting incremental taxes after the estimated date of completion and committing the District's funds on December 28, 2009, were not unlawful." *Devyn*, 2015 IL App (4th) 140819, ¶ 61. Such conclusion would only be sustainable if Bloomington adopted the amended statute in section 11-

---

[5]The *Devyn* court also relied on the required notification of termination to support its conclusion that the estimated date of completion was not a termination date (*Devyn*, 2015 IL App (4th) 140819, ¶ 60) and found the notification language would be otherwise superfluous. However, nothing in the Act requires a governmental body to maintain a TIF district until the estimated date of completion. As such, the notification may be utilized or necessary in situations where the TIF district is terminated earlier than expected. Further, if the General Assembly extends the original 23-year period, notice of termination could be utilized at any time within the extended period, if necessary. As such, I disagree with *Devyn*'s conclusion that the required notice of termination would be rendered superfluous by equating the estimated date of completion with the termination date.

74.4-3.5(a) pursuant to section 11-74.4-3(n)(J)(3) or requested an extension of the TIF district from the General Assembly.

¶ 40      Here, the Village of Shiloh did adopt the amended statute,[6] and therefore, the issue is limited to what effect, if any, the adoption had on the payment process. It is my position that this issue is governed by the amended statute in section 11-74.4-3.5(a) as well as section 11-74.4-8 (65 ILCS 5/11-74.4-8 (West 2020)). These statutes, when considered in conjunction with the Illinois property tax system, are dispositive of the issue.

¶ 41      At the time the Village of Shiloh ordinances were adopted in the case at bar, the applicable language addressing tax increment allocation financing stated:

> "A municipality, at the time a redevelopment project area is designated, may adopt tax increment allocation financing by passing an ordinance providing that the ad valorem taxes, if any, *arising from the levies upon taxable real property in such development project area* by taxing districts and tax rates determined in the manner provided in paragraph (c) of Section 11-74.4-9 *each year after the effective date of the ordinance until redevelopment project costs and all municipal obligations financing redevelopment project costs incurred under this Division have been paid \*\*\*.*" (Emphases added.) 65 ILCS 5/11-74.4-8 (West 1998).

The current iteration contains the same language. See 65 ILCS 5/11-74.4-8 (West 2020). Notably, the relevant language is the word "levies" and the time frame related thereto.

¶ 42      In Illinois, the property tax cycle is a two-year cycle. See Ill. Dep't of Revenue, *The Illinois Property Tax System*, at 6 (rev. Dec. 2022),

---

[6]On November 4, 2019, the Village of Shiloh issued two ordinances revising the estimated date of completion of redevelopment projections and retirement of obligations pursuant to section 11-74.4-3(n)(J)(3) of the Act (65 ILCS 5/11-74.4-3(n)(J)(3) (West 2018)). Village of Shiloh Ordinance No. 2019-11-04 A (approved Nov. 4, 2019); Village of Shiloh Ordinance No. 2019-11-04 B (approved Nov. 4, 2019).

https://tax.illinois.gov/content/dam/soi/en/web/tax/research/publications/documents/localgovern ment/ptax-1004.pdf [https://perma.cc/F24T-MUSZ].[7] During the first year, property is assigned a value that reflects its value as of January 1 of that year by the assessment officials. *Id.* During that same period, reviews of the assessment decisions are made, the Illinois Department of Revenue issues a state equalization factor and taxing districts determine the amount of revenues they need to raise from property taxes. *Id.* The taxing districts also hold any required truth-in-taxation hearings and certifies levies to the county clerk. *Id.* In that same year, the county clerk applies the state equalization factor, calculates the tax rate needed to produce the amount of revenues each taxing district may levy legally, and apportions the levy among the properties in a taxing district according to their equalized assessed values so that tax bills can be computed. *Id.* In the second year, the county collector, *inter alia*, prepares tax bills, receives property tax payments from property owners, and distributes taxes to the local government taxing districts that levied them. *Id.* Accordingly, the levy occurs in the first year, and the issuance of tax bills, collection of payments related thereto, and distribution of any incremental real estate tax revenues allotted to a TIF district occur in the second year.

¶ 43    Consistent with this process, section 11-74.4-8 of the Act (65 ILCS 5/11-74.4-8 (West 2020)) reveals that the first levy occurs the year after the ordinance is adopted. Therefore, no incremental real estate tax funds are available until the following year when the tax bills are issued, and payments are received. This is consistent with how our supreme court explained the TIF process when addressing the original 1977 enactment of the Act (Ill. Rev. Stat. 1977, ch. 11, ¶ 11-74.4-1 *et seq.*). *People ex rel. City of Canton v. Crouch*, 79 Ill. 2d 356, 360-62 (1980). The court stated the following:

_____

[7]The Property Tax Code also provides guidance (35 ILCS 200/1-1 *et seq.* (West 2020)).

14

"The procedure under the Act authorizes public hearings and, subsequently, the passage of an ordinance designating a redevelopment project area *** and approving a redevelopment plan or project [citation]. Notice of the hearing is required to be given to property owners within the redevelopment area, both by publication and mailing. ***

　　　　***

Once an ordinance is passed which adopts tax increment allocation financing, the county clerk immediately thereafter determines the most recently ascertained equalized assessed value of each lot, block, tract[,] or parcel of real property within the redevelopment project area. That value is designated the 'initial equalized assessed value.' The county clerk adds these values together to reach the 'total initial equalized assessed value' of all the taxable real property within the project area. The 'total initial equalized assessed value' is then used to compute the rate per cent of tax with respect to every taxing district in the redevelopment project area in lieu of the current equalized assessed value of all taxable real property, for as long as tax increment allocation financing is in effect. [Citation.] Each year after the adoption of the ordinance, until redevelopment costs are paid, those real property taxes which are attributable to the initial equalized assessed value shall be paid by the taxpayers to the various taxing districts in the manner required by law in the absence of the adoption of tax increment allocation financing. [Citation.] That portion of taxes which is attributable to the current equalized assessed value over and above the initial equalized assessed value of all taxable property in the project area shall be allocated to and, when collected, shall be paid by the county collector to the municipal treasurer, who shall deposit the taxes into a special fund called the special tax allocation fund of the municipality for the purpose of paying redevelopment project costs and

15

obligations incurred in the payment thereof. [Citation.] Once all redevelopment costs and obligations are paid, all surplus funds remaining in the special tax allocation fund shall be paid by the municipal treasurer to the county collector for payment to the taxing districts in the redevelopment area." (Emphases omitted.) *Id.*

¶ 44    *Crouch* reveals that the TIF district payments are those monies *in excess* of the initial equalized value and that the initial equalized value is determined in the same year the ordinance was adopted. *Id.* at 361. Only after a later assessment and levy would the "*current* equalized assessed value over and above the *initial* equalized assessed value of all taxable property in the project area" be determinable. (Emphases in original.) *Id.* at 362.

¶ 45    It is also noted that the amended statute in section 11-74.4-3.5(a) comports with section 11-74.4-8, the process as explained in *Crouch*, and the Illinois tax cycle. The amended statute states:

"Unless otherwise stated in this Section, the estimated dates of completion of the redevelopment project and retirement of obligations issued to finance redevelopment project costs (including refunding bonds under Section 11-74.4-7) may not be later than December 31 of the year in which the payment to the municipal treasurer, as provided in subsection (b) of Section 11-74.4-8 of this Act, is to be made with respect to ad valorem taxes levied in the 23rd calendar year after the year in which the ordinance approving the redevelopment project area was adopted if the ordinance was adopted on or after January 15, 1981." 65 ILCS 5/11-74.4-3.5(a) (West 2020).

The twenty-third levy occurs in the twenty-third year after the year the ordinance was adopted, and the estimated date of completion is based on the year after the twenty-third levy, which is

16

when the municipal treasurer collects the taxpayer money and distributes the incremental real estate tax revenues to the TIF district.

¶ 46    With these concepts in hand, it is now possible to address whether St. Clair County was required to provide incremental real estate tax revenues for levy year 2021/collection year 2022. As noted above, defendants filed a motion to dismiss claiming the county issued 23 payments. In support, the motion contained Thomas Holbrook's affidavit that stated, "St. Clair County extended, collected[,] and distributed incremental tax revenue for Village of Shiloh Tax Increment Financing Districts A & B for 23 years, from tax year 1998 (payable in 1999) though tax year 2020 (payable in 2021)." The County also argued, at oral argument before the trial court, that it levied the property prior to "the last Tuesday in December" in 1998, in accordance with section 18-15 of the Property Tax Code (35 ILCS 200/18-15 (West 2020)). The statements contained in the affidavit and argument are admissions revealing the County's failure to adhere to section 11-74.4-8, which starts the levy "each year after the effective date of the ordinance." 65 ILCS 5/11-74.4-8 (West 2020).

¶ 47    Given the admissions, as well as the fact that the Village of Shiloh amended their ordinance extending the estimated completion through December 31, 2022, the statute requires the initial levy to begin the year after the effective date of the ordinance, and each levy must continue "until redevelopment project costs and all municipal obligations financing redevelopment project costs incurred have been paid," the trial court erred in granting defendants' motion to dismiss.

¶ 48    The only other argument raised by defendants in support of their motion to dismiss is based on language found in section 11-74.4-8(b). *Id.* § 11-74.4-8(b). Here, defendants argue that the Village of Shiloh's extension of the completion date "shall not extend the property tax increment allocation financing authorized by this Section" and instead the "taxes levied, collected[,] and

17

distributed" must be "in a manner applicable in the absence of the adoption of tax increment allocation financing." While compelling at first blush, the quoted language omits relevant language, namely the words referencing Public Act 87-1272. The full section states:

> "If a municipality extends estimated dates of completion of a redevelopment project and retirement of obligations to finance a redevelopment project, *as allowed by* [*Public Act 87-1272*], that extension shall not extend the property tax increment allocation financing authorized by this Section. Thereafter the rates of the taxing districts shall be extended[,] and taxes levied, collected[,] and distributed in the manner applicable in the absence of the adoption of tax increment allocation financing." (Emphasis added.) *Id.*

¶ 49    The public act that amended section 11-74.4-3.5(a)—and was later adopted by the Village of Shiloh on November 4, 2019—was Public Act 95-932 (eff. Aug. 26, 2008). Public Act 87-1272 (eff. Mar. 3, 1993) allowed extension of completion dates and retirement of obligations to finance redevelopment project costs *through December 31, 2013, for those project areas in which bonds were issued before July 29, 1991, in connection with a redevelopment project in the area within the State Sales Tax Boundary*. 65 ILCS 5/11-74.4-3 (West 1994). There is no evidence in the record that either TIF district in the case at bar falls within this latter category or that any amendment pursuant to Public Act 87-1272 is relevant here.

¶ 50    Accordingly, I agree with my colleagues that the trial court's order granting defendants' motion to dismiss was in error. However, for the reasons set forth above, I find reliance on *Devyn*, 2015 IL App (4th) 140819, unwarranted, and the issue easily determined by review of the requisite statutes in conjunction with the evidence and arguments presented to the trial court.

¶ 51    For these reasons, I specially concur.

*Village of Shiloh v. County of St. Clair*, 2023 IL App (5th) 220459

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 21-MR-217; the Hon. Julie K. Katz, Judge, presiding. |

| | |
|---|---|
| **Attorneys for Appellant:** | Alan R. Farris, of Sparta, for appellant Village of Shiloh. |
| | Jason R. Caraway, of Caraway, Fisher and Broombaugh, P.C., of Belleville, for appellant Carrie Sanders. |

| | |
|---|---|
| **Attorneys for Appellee:** | Garrett P. Hoerner, of Becker, Hoerner & Ysursa, P.C., of Belleville, for appellees County of St. Clair and Thomas Holbrook. |
| | S. Jeff Funk and Brandon K. Wright, of Miller, Tracy, Braun, Funk & Miller Ltd., of Monticello, for appellees O'Fallon Township High School District No. 203 and O'Fallon Community Consolidated School District No. 90. |
| | Brian D. Flynn, of Flynn Guymon & Garavalia, of Belleville, for appellees St. Clair Township and St. Clair Township Road District. |
| | Kevin T. Dawson, of Binsbacher, Dawson & Henke, LLC, of Mascoutah, for appellees Shiloh Valley Township and Shiloh Valley Township Road District. |
| | Scott L. Ginsburg, of Robbins Schwartz Nicholas Lifton & Taylor, Ltd., and Kelly M. Lyden, of Null, US, both of Chicago, for appellee Whiteside School District No. 115. |